In re Mary M. BIBLER, a/k/a Mary M. Learned, a/k/a Mary M. Learned–Fleming, Debtor.

Mary M. Bibler, Plaintiff,

v.

SN Servicing Corporation, Defendant.

Bankruptcy No. SD 00–00800.
Adversary No. 03–81025.

United States Bankruptcy Court,
W.D. Michigan.

April 21, 2004.

Paul K. Beardslee, Beardslee Law Office, Marshall, MI, for Debtor and Plaintiff.

James W. Batchelor, Trott & Trott, Grand Rapids, MI, for Defendant.

## OPINION

JO ANN C. STEVENSON, Bankruptcy Judge.

This matter comes before the Court upon SN Servicing Corporation's Motion to Dismiss Adversary Proceeding for Lack of Jurisdiction. The following constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bank. P. 7052. In reaching its determination this Court has considered the oral arguments made by each party and the pleadings filed.

*Facts and Arguments*

On August 4, 1997, Mary and Larry Bibler executed a mortgage with Commonpoint Mortgage (Commonpoint) on their home (the First Mortgage). It was recorded on August 25, 1997. Unbeknownst to the Biblers, Commonpoint sold and assigned this mortgage to Arcata Investments (Arcata) on August 25, 1997. The assignment was recorded on December 28, 1999.

On September 4, 1998, the Biblers executed another mortgage (the Second Mortgage) to Commonpoint in order to refinance and pay the First Mortgage in full. The Second Mortgage was recorded on October 2, 1998. Unfortunately, the proceeds from the Second Mortgage were never forwarded to Arcata to pay the First Mortgage, but instead were deposited into Commonpoint's general account. The Second Mortgage was assigned to Residential Funding Corporation (Residential) on October 2, 1998 and recorded on December 11, 1998. These transactions resulted in two separate chains of title—the First Mortgage and chain of title of Arcata Investment, which was never paid from the proceeds of the Second Mortgage and chain of title involving Residential.

Arcata subsequently assigned the First Mortgage to Alaska Seaboard Partners, where it was recorded on September 21, 2001. Alaska Seaboard Partners assigned it to Mortgage Electronic Registration Systems, Inc., where it was recorded on November 14, 2002. The servicer of this loan is SN Servicing Corporation (SN Servicing), the Defendant in this action.

The second chain of title follows a shorter but similar route in that Residential assigned the Second Mortgage to National Loan Investors, which is the current holder. This assignment was recorded on May 16, 2000.

In the meantime, the Biblers divorced and Mary Bibler (Debtor) filed Chapter 13 bankruptcy on February 3, 2000. She did not list Arcata or its assignees on her schedules because she thought the First Mortgage had been paid from the proceeds of the Second Mortgage, which resulted from the refinancing with Commonpoint. Consequently, the Chapter 13 Plan did not provide for the First Mortgage in the first

chain of title, but did provide for the Second Mortgage in the second chain of title.

The Debtor's Chapter 13 Plan was completed on November 20, 2003. Her discharge is pending. On December 5, 2003, she filed an adversary proceeding asking the Court to determine the validity, priority and extent of the First Mortgage. SN Servicing countered with this Motion to Dismiss Adversary Proceeding for Lack of Jurisdiction.

SN Servicing argues that the court lacks jurisdiction because at the time the adversary complaint was filed, the property to which the lien attached was no longer property of the estate, having reverted back to the Debtor under 11 U.S.C. § 1327(b). Consequently, the validity of the lien on property, not property of the estate has no effect on the payments of a completed confirmed plan, the administration of the estate or the amount distributed to creditors. The outcome of this adversary, argues SN Servicing, deals entirely with issues of state property law and will affect only the two creditors involved. Therefore, this is neither a core nor a "related to" proceeding.

The Debtor argues that SN Servicing consented to the Bankruptcy Court's jurisdiction when it filed its relief from stay. SN Servicing also had notice of the bankruptcy before the Plan was completed and its claim arose prior to the bankruptcy filing. Therefore, SN Servicing had an opportunity to file a claim to which the Debtor would have objected. Because it had notice and decided to not file a claim, SN Servicing is bound by the res judicata effect of a confirmed plan.

In addition, the Debtor seeks to establish and enforce rights which were created under bankruptcy law, to wit, the validity, priority and extent of a lien. The Debtor argues that Commonpoint and Arcata were known to each other. The Debtor had no knowledge of Arcata. Consequently, Arcata may have a claim against Commonpoint for conversion, but since the Debtor paid funds to Commonpoint which should have been forwarded to Arcata, she should not be held responsible for Commonpoint's misappropriation.

The Debtor further argues that the outcome of this adversary proceeding could result in the foreclosure on her home and would therefore have a very strong impact upon her. Once the treatment of the lien is determined, whether in bankruptcy court or state court, the Debtor would most likely be forced to file another Chapter 13 to deal with the remaining debt on her home.

*Analysis and Findings*

■ SN Servicing is under no obligation to file a proof of claim in the bankruptcy if it plans to completely rely on its security and desires no distribution from the bankruptcy estate.

> The court is without authority to compel a creditor to file his claim ... a creditor may rely entirely on his security. The filing of a claim in bankruptcy is not essential to the preservation of a lien. The failure to file a proof of claim does not affect the creditor's right to the security.

*Clem v. Johnson,* 185 F.2d 1011 (8th Cir. 1950).

Consequently, the filing of a formal claim is not essential to lien preservation.

■ Whether SN Servicing had actual or constructive notice of the bankruptcy, it chose not to subject itself to the jurisdiction of the bankruptcy court and therefore cannot be bound by the terms of a confirmed plan.

> A confirmed plan is binding upon all parties in interest. Therefore, even when the secured creditor does not file a

312

claim, the debtor must continue to pay the full plan payment. Because no allowed claim has been filed, the trustee must retain the funds for future payment to the secured creditor if a claim is subsequently filed.

*In re Hudson,* 260 B.R. 421 (Bankr. W.D.Mich.2001).

▪ But what happens if the secured creditor is unknown to the debtor? The short answer is, that the creditor is still entitled to its *in rem* rights in the collateral. It can enforce its lien in the usual way, by bringing a foreclosure action in state court. If the creditor chooses not to subject itself to the jurisdiction of the bankruptcy court, even with notice of the filing of the petition, it would not file a proof of claim. Likewise, if the debtor files a protective claim on the creditor's behalf, the creditor could still object to the proof of claim, citing its desire to remain out of the purview of the bankruptcy court and enforce its state court rights upon plan completion.

▪ We further find that this is not a core proceeding. Although the priority of a lien is at issue, the determination of this question will have little, if any effect on the bankruptcy estate. The property at issue has reverted back to the Debtor. The priority argument involves two creditors. Whatever the outcome, there will be no greater or lesser amount of money in the estate to increase or decrease distribution to the unsecured creditors. Although the Debtor has yet to receive her discharge, the delay is solely based upon the pendency of this adversary proceeding.

▪ The Debtor also argues that this proceeding could be considered as being "related to" the bankruptcy. "[B]ankruptcy courts have jurisdiction of 'cases under title 11' and 'civil proceedings arising under title 11, or arising in or related to

cases under title 11.'" 28 U.S.C. § 1334. The Sixth Circuit Court of Appeals, in *In re Salem Mortgage Co.,* 783 F.2d 626 (6th Cir.1986) determined that the "related to" language must be broadly construed, but within the limits of 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(3) and (c)(1).

The claim presented in this case could only be "related to" the ... bankruptcy proceeding if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."*Browning v. Levy,* 283 F.3d 761, 773 (6th Cir.2002).

▪ A working definition of "related to" jurisdiction was used in *Citizens National Bank of Bowling Green v. Schaberg Lumber Co. (In re Bowling Green Truss, Inc.),* 53 B.R. 391 (Bankr.W.D.Ky.1985).

If an action has a direct and substantive impact on the bankruptcy estate or its administration, then it is related to the bankruptcy case and jurisdiction exists. But if a controversy has only a vague or incidental connection with a pending case, and any impact its resolution may have on the bankruptcy case is speculative, indirect or incidental, then the matter is unrelated to the bankruptcy case and [the bankruptcy court should] not hear it.

▪ The Debtor argues that her home might be taken away if SN Servicing prevails, which in turn would cause her to file another Chapter 13 bankruptcy. Consequently, she would end up back in bankruptcy court anyway, so the case may as well stay here. This is speculation. "Generally, where an opinion is sought merely to assist a party in some future litigation, justiciability principles argue against assuming jurisdiction." *Stark v. Armstrong World Industries, Inc.,* 20 Fed.Appx. 495, 500 (6th Cir.2001).

More importantly is the point at which this case presently sits. The Plan has been completed. The case is fundamentally over. The Sixth Circuit has stated most succinctly:

> Given this ruling's lack of impact upon any matter at issue in *this* case—and, indeed, it does not appear that there *were* any outstanding issues in this case at the time of the ruling—it is extremely doubtful whether the circumstances permitted an exercise of the District Court's limited jurisdiction over actual cases and controversies.

*McCurry v. Adventist Health System/Sunbelt, Inc.*, 298 F.3d 586 (6th Cir.2002).

Consequently, we find that the Bankruptcy Court lacks jurisdiction to hear this adversary proceeding. The parties should continue their litigation in state court to determine which lien has priority and whether the Debtor can rely on her arguments of laches and prior payment.

**ORDER**

For the reasons stated in the attached Opinion:

NOW, THEREFORE, IT IS HEREBY ORDERED that:

1. SN Servicing Corporation's Motion to Dismiss Adversary Proceeding for Lack of Jurisdiction is GRANTED;

2. A copy of this Opinion and Order shall be served by first class United States mail, postage pre-paid upon Mary M. Bibler, Paul K. Beardslee, Esq., SN Servicing Corporation, James W. Batchelor, Esq., National Loan Investors, and Jessica B. Allmand, Esq.